1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY POWELL, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>v.<br><br>UHG I LLC,<br><br>                              Defendant. | Case No.:  23cv0086 DMS(KSC)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION** |

This case comes before the Court on Defendant's second motion to dismiss and compel arbitration.  Plaintiff filed an opposition to the motion, and Defendant filed a reply.  For the reasons set out below, the motion is denied.

## I.

## BACKGROUND

The factual background of the case was set out in the Court's order denying Defendant's first motion, (ECF No. 46), and is repeated below with modifications based on newly submitted evidence and additional facts relevant to the parties' arguments.

On September 12, 2018, Plaintiff entered into a California Consumer Installment Loan Agreement and Promissory Note with CNU of California, LLC d/b/a CashNetUSA ("Loan Agreement").  (*See* Decl. of Kieran Long in Supp. of Mot. to Compel Arbitration ("Long Decl."), Ex. A, ECF No. 21-3.)  That Agreement defines "you" and "your" to

1

mean the borrower, i.e., Plaintiff, and "we," "us," and "our" to mean CNU of California, LLC d/b/a CashNetUSA.  (*Id.*)  The Loan Agreement states, "We may assign or transfer this Loan Agreement or any of our rights hereunder."  (*Id.*)  It also includes a lengthy arbitration provision.  (*See id.*)

Before the Loan Agreement was executed, CNU Online Holdings, LLC, which is listed on the Loan Agreement as the "sole member of CNU of California, LLC (d/b/a CashNetUSA)," entered into a Forward Flow Accounts Sale Agreement ("FFASA") with JTM Capital Management, LLC.  (*See* Decl. of Jacob Adamo in Supp. of Mot. to Compel Arbitration ("Adamo Decl."), Ex. B, ECF No. 21-2.)  The FFASA states CNU Online Holdings is acting "on its own behalf and in its capacity as an authorized agent for each of its wholly-owned domestic subsidiaries listed on Exhibit A to this Agreement[.]"  (*Id.*)  CNU of California is listed on Exhibit A as one of those subsidiaries or affiliates.  (*Id.*)  Pursuant to the FFASA, CNU Online Holdings agreed to sell certain of its accounts to JTM.  (*Id.*)

After the Loan Agreement and the FFASA were executed, JTM entered into an Assignment of the FFASA with its wholly-owned subsidiary UHG, LLC, and CNU Online Holdings.  (Adamo Decl., Ex. C, ECF No. 21-2.)  Pursuant to that Assignment, JTM assigned its rights under the FFASA to UHG.  (*Id.*)

Less than one month later on January 3, 2019, UHG, LLC, executed another Assignment by which it assigned its rights under the FFASA to "its wholly-owned subsidiary," Defendant UHG I.  (Decl. of Jacob Adamo in Supp. of Second Mot. ("Second Adamo Decl."), Ex. D, ECF No. 49-3.)

On October 30, 2019, CNU Online Holdings, on behalf of CNU of California, sold, assigned, and transferred its "rights, title and interest" in Plaintiff's loan to Defendant.  (Second Adamo Decl. ¶ 14, Ex. E, ECF No. 49-3.)

On May 19, 2021, Defendant filed a Complaint against Plaintiff for breach of contract and open book account in San Diego Superior Court.  (Decl. of Nicholas Barthel in Supp. of Pl.'s Opp'n to Def.'s Second Mot., Ex. 2, ECF No. 50-1.)  In that Complaint,

Defendant sought damages in the amount of $5,671.62, attorneys' fees and costs as a result of Plaintiff's failure to repay his loan.  (*Id.*)  The current status of that case is unclear, but it was pending when the present case was filed on January 17, 2023. Defendant has filed an Answer in this case, and the parties have attended an Early Neutral Evaluation Conference ("ENE") with the Magistrate Judge, and engaged in motion practice and fact discovery.

## II.

## DISCUSSION

As noted, this is Defendant's second motion to compel arbitration.  The Court denied the first motion because Defendant failed to show it had standing to enforce the arbitration provision in the Loan Agreement.  In the present motion, Defendant reiterates that it has standing, therefore the Court should order Plaintiff's claims to arbitration.  Plaintiff again disputes that argument, and raises additional arguments as to why Defendant's motion should be denied.

**A.    Standing**

The Court denied Defendant's first motion to compel arbitration because Defendant did not show it had standing to enforce the arbitration provision.  Specifically, the evidence on the first motion reflected a break in the chain of title to the FFASA between UHG, LLC and Defendant UHG I.  (ECF No. 46 at 4-5.)

In the present motion, Defendant explains the apparent "break" was actually a "scrivener's error" in the relevant Assignment.  (Decl. of Darren Turco in Supp. of Second Mot. ¶ 7, ECF No. 49-2.)  Specifically, Defendant's Chief Executive Officer Darren Turco states the assignor of the FFASA should have read "UHG, LLC" rather than "JTM UHG, LLC."  (*Id.* ¶ 6.)

Plaintiff argues this new evidence creates a factual dispute that can only be resolved through an evidentiary hearing.  However, the Court disagrees.  Although the Assignment in question lists JTM UHG, LLC as the Assignor, Defendant has presented evidence that this was simply a "scrivener's error," and the actual Assignor was UHG, LLC.  Plaintiff

has failed to present any evidence to dispute Defendant's explanation of the Assignment, and thus there is no genuine issue of material fact.  In light of this new evidence, there was no break in the chain of title to the FFASA, and Defendant does have standing to enforce the arbitration provision.

Plaintiff raises an additional argument on standing, namely that Defendant lacks standing because it has failed to provide evidence of privity between CNU of California and CNU Online Holdings.  Plaintiff argues the Loan Agreement granted the right of assignment to CNU of California only, but CNU of California did not sign the FFASA. Instead, the only signatory to the FFASA was CNU Online Holdings, and there is no evidence CNU Online Holdings had the right to sign the FFASA on behalf of CNU of California.

Contrary to Plaintiff's argument, California law provides that CNU Online Holdings, as a member of CNU of California, may execute instruments on behalf of CNU of California, and thereby bind CNU of California to the terms of the instrument.  California Corporations Code § 177703.01(a).[1]   Indeed, that is what happened with the Loan Agreement, (*see* Adamo Decl., Ex. A at 13) (signed by "David Fisher, President, CNU Online Holdings, LLC, *as sole member of CNU of California, LLC*") (emphasis added), and the FFASA.  (*See* Adamo Decl., Ex. B at 18) (signed by "David Fisher, Authorized Representative, CNU Online Holdings, LLC, on its own behalf and *its capacity as an*

---

[1] This statute provides:  "Unless the articles of organization indicate the limited liability company is a manager-managed limited liability company, every member is an agent of the limited liability company for the purpose of its business or affairs, and the act of any member, including, but not limited to, the execution in the name of the limited liability company of any instrument, for the apparent purpose of carrying on in the usual way the business or affairs of the limited liability company of which that person is a member, binds the limited liability company in the particular matter, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the member is dealing has actual knowledge of the fact that the member has no such authority."  Cal. Corp. Code § 177703.01(a).

*authorized agent for each of the CNU Affiliates*"[2]) (emphasis added).  In light of this statute, there is no need for Defendant to show privity between CNU of California and CNU Online Holdings.  Plaintiff's argument that Defendant lacks standing on that basis is therefore rejected.

**B.  Waiver**

With standing resolved, the only other issue for the Court is whether Defendant waived its right to arbitration.[3]  "The right to arbitration, like other contractual rights, can be waived."  *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (citing *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009)).  To show waiver, the party asserting it must demonstrate: "(1) knowledge of an existing right to arbitration and (2) intentional acts inconsistent with that existing right."  *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (citing *Hill v. Xerox Business Services, LLC*, 59 F.4th 457, 460 (9th Cir. 2023)).

Here, Plaintiff asserts Defendant knew of its right to compel arbitration since at least May 19, 2021, when it filed its complaint against Plaintiff in state court.  Defendant does not genuinely dispute this argument.  Instead, it attempts to draw a distinction between knowledge of its right to arbitrate and knowledge of an "existing" right to arbitrate, saying it did not have the latter until Plaintiff filed his Complaint.  However, knowledge of a right to arbitrate is not dependent on the filing of a claim.  The right to arbitrate exists by virtue

---

[2] CNU of California, LLC is listed as a CNU Affiliate in Exhibit A to the FFASA.

[3] Plaintiff also argues the Loan Agreement is void because CNU Online Holdings was not a licensed lender under California law.  However, CNU Online Holdings was not a party to the Loan Agreement, and thus whether it was licensed is irrelevant.  The only parties to the Loan Agreement were Plaintiff and CNU of California, and there is no dispute CNU of California was properly licensed.  Even if there was a dispute, that dispute would not be subject to resolution by this Court.  Rather, the plain terms of the arbitration provision delegate that issue to the arbitrator.  (*See* Adamo Decl., Ex. A) (stating "any dispute or controversy that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.")

of the Loan Agreement, and there is no dispute Defendant was aware of that Agreement before the present case was filed.  Thus, the Court finds Defendant did have knowledge of the right to arbitrate.

Turning to the second element, "'[t]here is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, [the courts] consider the totality of the parties' actions.'"  *Hill*, 59 F.4th at 471 (quoting *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019)).  In so doing, the relevant question is "whether those actions holistically 'indicate a conscious decision … to seek judicial judgment on the merits of the arbitrable claim, which would be inconsistent with a right to arbitrate.'"  *Armstrong*, 59 F.4th at 1015 (quoting *Hill*, 59 F.4th at 473 n.19).

Here, there is evidence to support both parties' arguments.  On Plaintiff's side, Defendant did not file a motion to compel arbitration in response to Plaintiff's Complaint, but instead filed an Answer, which did not raise arbitration as an affirmative defense. Defendant also participated in preparation of the parties' Rule 26(f) Report, attended an ENE conference with the Magistrate Judge, opposed Plaintiff's motion for leave to file an amended complaint, jointly requested an extension of time to complete discovery, in which there was no mention of arbitration, and engaged in initial discovery, including sending discovery to Plaintiff, responding to discovery from Plaintiff, taking Plaintiff's deposition, and defending its Person Most Knowledgeable ("PMK") deposition.  Defendant also waited nearly seven months after the Complaint was filed before filing its first motion to dismiss and compel arbitration.

For its part, Defendant states it requested a stay of discovery, which was filed after it filed its motion to compel arbitration, and after that motion was denied, Defendant filed an objection to that denial.  Defendant also asserts it has only "minimally participated" in this litigation, (Reply at 5), and has not attempted to litigate the merits of this case.  (*Id.* at 6.)

/ / /

6

1    Considering these actions as whole, they clearly weigh in favor of a finding that

2 Defendant has engaged in acts inconsistent with its right to arbitrate.  As noted, although

3 Defendant knew of its right to compel arbitration, it did not assert that right until nearly

4 seven months after Plaintiff filed his Complaint.  Rather than filing a motion to compel

5 arbitration in response to the Complaint, Defendant chose to file an Answer, which did not

6 assert arbitration as an affirmative defense.  Defendant then entered into the discovery

7 process, attended an ENE, opposed Plaintiff's motion for leave to file an amended

8 complaint, and engaged in discovery, including taking Plaintiff's deposition and defending

9 the deposition of its PMK.  Similar to Defendant's decision to file a complaint against

10 Plaintiff in state court,[4] Defendant's conduct in this case has been inconsistent with its right

11 to arbitrate.  Because Plaintiff has shown the two elements are met—knowledge of a right

12 to arbitrate and intentional acts inconsistent with that right—the Court finds Defendant has

13 waived its right to arbitrate this case.

14 / / /

15 / / /

16 / / /

17 / / /

18

19 _____

20 [4] The filing of the state court complaint is clearly an act inconsistent with Defendant's right

21 to arbitrate.  *Leo Middle East FZE v. Zhang*, No. 21-cv-03985-CRB, 2022 WL 207663, at
 *4 (N.D. Cal. Jan. 24, 2022) (finding plaintiffs' decision to file a complaint with the court

22 indicates they did not wish to exercise their right to arbitrate); *see also Haliburton Int'l
 Foods, Inc. v. Marasco*, No. EDCV 20-1069 JGB (SHKx), 2020 WL 7872126, at *2 (C.D.

23 Cal. Dec. 3, 2020) (stating plaintiff's decision to pursue arbitrable claims in federal court

24 was inconsistent with right to arbitrate); *Steiner v. Horizon Moving Systems, Inc.*, No.
 EDCV 08-682-VAP (CTx), 2008 WL 4822774, at *3 (C.D. Cal. Oct. 30, 2008) (same);

25 *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1118 (8th Cir. 2011)

26 (same); *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007)
 (quoting *Ritzel Communications v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir.

27 1993)) ("A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially

28 invoke[s] the litigation machinery before asserting its arbitration right.'").

23cv0086 DMS(KSC)

1

### III.

2

### CONCLUSION AND ORDER

3
4
5

In light of the above, the Court finds Defendant has standing to enforce the arbitration provision of the Loan Agreement, but that it waived its right to do so. Accordingly, Defendant's second motion to compel arbitration is denied.

6

**IT IS SO ORDERED**.

7

Dated:  May 21, 2024

8

Hon. Dana M. Sabraw, Chief Judge

9

United States District Court

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28