# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY POWELL, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>UHG I LLC,<br><br>                                    Defendant. | Case No.:  23cv0086 DMS(KSC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This case comes before the Court on Defendant's motion for summary judgment. Plaintiff filed an opposition to the motion along with a request for judicial notice, and Defendant filed a reply brief.[1]  After a thorough review of the issues, the Court grants the motion.

/ / /

/ / /

/ / /

---

[1]  Plaintiff filed an application for leave to file a surreply to address arguments in Defendant's reply brief on the issue of judicial notice.  (ECF No. 96.)  Defendant opposed that request.  (ECF No. 97.)  The Court finds the documents at issue in Plaintiff's request for judicial notice are not necessary to the Court's resolution of the present motion. Accordingly, the Court denies Plaintiff's application to file a surreply.

# I.

# BACKGROUND

In 2018, Plaintiff applied for a loan with CashNetUSA. (Decl. of Nicholas Barthel in Supp. of Opp'n to Mot. ("Barthel Decl."), Ex. L at 35[2], ECF No. 99.) CashNet is a subprime lender, meaning its customer base "consist[s] of underbanked customers who may not have access to credit through traditional means such as a bank loan." (Barthel Decl., Ex. A at 72.) Consumers interested in obtaining a loan from CashNet fill out an online application, and their information is uploaded to CashNet's automated underwriting models. (*Id.* at 148.) Those models consider the applicant's income source, (*id.* at 51), their credit report, (*id.*), their credit score, (*id.* at 70), and their prior loan history with CashNet, among other things. (*Id.* at 149.) After that information is loaded into the system, the model generates an offer that includes the amount of the loan and the annual percentage rate, or APR. (*Id.* at 54.) Applicants are not allowed to negotiate the terms of an offer. (*Id.* at 60.) In other words, the terms are take-it-or-leave-it. (*Id.* at 60, 89.)

Plaintiff applied for his loan with CashNet by supplying his personal information, including employment information, on the online loan application. (Barthel Decl., Ex. L at 39.) Plaintiff's application was approved instantly, (Decl. of Brendan H. Little, Esq. in Supp. of Mot. ("Little Decl."), Ex. A at 34, 39-40. ECF No. 79-3), with Cashnet offering Plaintiff a loan in the amount of $3,500 with an APR of 128.40%. (First Am. Compl. ("FAC") ¶ 22.) The terms of Plaintiff's offer were "dictated by the outcomes of [CashNet's] underwriting models[,]" (Barthel Decl., Ex. A at 148), and consistent with CashNet's general practice, this offer was provided on a take-it-or-leave-it basis. (FAC ¶ 22.) Plaintiff admits he had an opportunity to review the offer before signing it, (Little Decl., Ex. A at 41), but he "needed some extra cash to get [his] head above water," (Barthel Decl., Ex. L. at 37), so Plaintiff accepted the offer.

---

[2] The page numbers cited here and throughout this Order refer to the page numbers of the underlying documents.

CashNet deposited the funds in Plaintiff's account approximately three days later. (Little Decl., Ex. A at 40.)  After taking the loan, Plaintiff fell behind on his payments. (FAC ¶ 23.)  When the loan was eventually charged off, the total outstanding balance was $5,671.62.  (*Id.*)

On October 30, 2019, Defendant UHG I purchased Plaintiff's loan.  (*Id.* ¶ 24; Pl.'s Resp. to Def.'s Statement of Facts ("SOF"), Fact No. 5, ECF No. 86-2.)  In an attempt to collect on the loan, Defendant filed a lawsuit against Plaintiff in state court on May 19, 2021.  (*Id.* ¶ 25; SOF, Fact No. 6.)

On January 17, 2023, Plaintiff filed the present case.  In the Complaint, Plaintiff alleges the interest rate on his loan was unconscionable, and it was therefore unlawful for Defendant to attempt to collect on the loan.  He alleges claims under California Business and Professions Code § 17200, et seq., the Fair Debt Collection Practices Act, and the Rosenthal Fair Debt Collection Practices Act.

## II.

## DISCUSSION

As mentioned above, all of Plaintiff's claims depend upon a finding that the interest rate on Plaintiff's loan (128.40%) was unconscionable.[3]  Defendant argues the rate was not unconscionable, therefore it is entitled to summary judgment on all of Plaintiff's claims. Plaintiff disputes that argument, and also asserts there are genuine issues of material fact that preclude the Court from deciding the issue of unconscionability on summary judgment.

**A.    Legal Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

_____

[3] Plaintiff concedes his "inadequate assignment" theory is no longer viable in light of the Court's ruling on Defendant's motion to dismiss and compel arbitration.  (Opp'n to Mot. at 9, ECF No. 86.)  Despite Defendant's argument on this issue, Plaintiff does not assert the APR on his loan is a per se violation of California Financial Code § 22304.5. Accordingly, the Court does not address that argument.

moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here, the parties do not dispute that unconscionability is a question of law for the Court. Nevertheless, Plaintiff argues there are genuine issues of material fact on unconscionability that must be resolved before the Court makes the ultimate determination. Clearly, numerous factual inquiries bear on the question of whether the APR in Plaintiff's loan was unconscionable. *McCollum v. XCare.net, Inc.*, 212 F.Supp.2d 1142, 1150 (N.D. Cal. 2002) (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal. App. 4th 1042, 1055 (2001)). But, the need to conduct factual inquiries does not preclude the Court from deciding the issue on summary judgment. That would only be necessary if there were genuine issues of material fact, and Plaintiff has

failed to identify any such issues here.  Accordingly, the Court turns to the legal question of unconscionability.

**B.    Unconscionability**

"Unconscionability is a flexible doctrine."  *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 982 (2018).    It "requires oppression or surprise—that is, procedural unconscionability—along with the overly harsh or one-sided results that epitomize substantive unconscionability."  *Id.*  "Some measure of both procedural and substantive unconscionability must be present—although given the sliding scale nature of the doctrine, more of one kind mitigates how much of the other kind is needed."  *Id.* (citations omitted).

    1.    Procedural Unconscionability

In determining whether a contract or one of its terms is procedurally unconscionable, courts:

> must consider whether there was (1) undue oppression arising from 'an inequality of bargaining power,' including the various factors tending to show relative bargaining power such as the parties' sophistication, their cognitive limitations, and the availability of alternatives; and (2) surprise owing to, for example, the 'terms of the bargain [being] hidden in a prolix printed form' or pressure to hurry and sign.

*Id.* at 983 (citations omitted).  Here, both parties offer arguments on the issues of undue oppression and surprise.

    *a.*    *Undue Oppression*

Turning first to undue oppression, Defendant argues Plaintiff "is a sophisticated party, as he is a business owner and manages his own LLC." (SOF, Fact No. 18.)  However, Plaintiff did not start that business until 2020, which is two years after he took the subject loan.  (*Id.*)

Defendant also suggests Plaintiff is a sophisticated party because he had experience with other short-term or "payday" loans.  (SOF, Fact No. 15.)  Plaintiff does not dispute that fact, (*id.*), but even considering those prior dealings, they would not show Plaintiff and CashNet, which "is part of the publicly traded company, Enova International, Inc.[,]"

1    https://www.cashnetusa.com/about-us.html, enjoyed similar or equal bargaining power

2    with respect to the loan at issue here.

3         Plaintiff, meanwhile, points to the online application process and the "take-it-or-

4    leave-it" nature of the agreement to show there was undue oppression.  However, Plaintiff

5    fails to cite any authority to support his argument that the on-line application process

6    creates undue oppression or otherwise renders the resulting agreement procedurally

7    unconscionable.  Indeed, there is case law to the contrary.  *See Valezquez v. Sears, Roebuck*

8    *and Co.*, No. 13cv680-WQH-DHB, 2013 WL 4525581, at *6 (S.D. Cal. Aug. 26, 2013)

9    (finding on-line method of presenting agreement did not render agreement procedurally

10   unconscionable).

11        The "take-it-or-leave-it" nature of the agreement is another matter.  Here, there is no

12   dispute Plaintiff had no opportunity to negotiate the terms of the loan agreement.  (*See*

13   Barthel Decl., Ex. A at 88-89.)  He simply had the "option to agree or not proceed."  (*Id.*

14   at 89.)  Courts tend to find this factor weighs in favor of "at least a minimal degree of

15   procedural unconscionability."  *Captain Bounce, Inc. v. Business Financial Services, Inc.*,

16   No. 11-CV-858 JLS (WMC), 2012 WL 928412, at *6 (S.D. Cal. Mar. 19, 2012).  *See also*

17   *O'Donovan v. CashCall, Inc.*, No. C 08-03174 MEJ, 2009 WL 1833990, at *7 (N.D. Cal.

18   June 24, 2009) (finding complaint adequately alleged procedural unconscionability where

19   it alleged loans were presented on "take-it-or-leave-it" basis); *Szetela v. Discover Bank*, 97

20   Cal. App. 4th 1094, 1100 (2002) ("When the weaker party is presented the clause and told

21   to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and

22   therefore procedural unconscionability, are present.")

23             *b.*    <u>Surprise</u>

24        Turning to the issue of surprise, Defendant asserts Plaintiff was not forced or

25   pressured into applying for the loan.  (SOF, Fact No. 19.)  Instead, Plaintiff sought out the

26   loan on his own and filled out the application by himself.  (*Id.*)  Plaintiff does not dispute

27   he applied for the loan by himself, but claims he was pressured to do so.  (*Id.*)  In support

28   of this argument, Plaintiff relies on his deposition testimony and an email he received from

CashNet.  The deposition testimony reflects Plaintiff was struggling to get on his feet after moving from Missouri to California.  (Barthel Decl., Ex. A at 102-03.)  However, that is not the kind of pressure that is contemplated in a procedural unconscionability analysis. *See Richardson v. Sunbelt Staffing, LLC*, No. 2:25-cv-00403-DJC-JDP, 2025 WL 1725771, at *4 (E.D. Cal. June 20, 2025) ("Whatever external pressure Plaintiff felt from herself or other factors in her life regarding the necessity of signing the Agreement cannot overcome the explicit voluntary nature of that Agreement.")  Rather, the relevant question is whether the stronger party, here CashNet, applied pressure on the weaker party, Plaintiff, to enter into the transaction.  *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003) ("when the stronger party pressures, harasses, or compels another party into entering into a contract, 'oppression and, therefore, procedural unconscionability, are present.'") (internal quotation marks omitted).

On that question, Plaintiff cites an email he received from CashNet with the heading, "Tackle financial emergencies and save at the same time!"  (SOF, Fact No. 19) (citing Barthel Decl., Ex. C).  However, there is no evidence Plaintiff saw this email before applying for the subject loan and that he therefore felt any pressure as a result of the email. Plaintiff also cites another email he received from CashNet, which, according to Plaintiff, contained a threat that "if Plaintiff seeks other offers, [CashNet] may retract its offer." (Opp'n at 12.)  But the email, which informed Plaintiff his loan was approved, contains no such language.  It states first, that "CashNetUSA reserves the right to cancel your loan prior to [your receipt of loan funds,]" and subsequently states, "Please remember that applying at multiple providers may adversely affect your ability to qualify for a cash advance with us and other providers in the future."  (Barthel Decl., Ex. B.)  Nowhere does it threaten Plaintiff with retraction of the loan offer if Plaintiff seeks other offers.  Thus, despite Plaintiff's argument, there is no evidence in the record that CashNet applied any pressure on Plaintiff to apply for or accept the loan.  This weighs against a finding of procedural unconscionability.  *See Shierkatz Rllp v. Square, Inc.*, No. 15-cv-02202-JST, 2015 WL

9258082, at *9 (N.D. Cal. Dec. 17, 2015) (finding absence of pressure on weaker party militated against finding of procedural unconscionability).

Next, Defendant argues Plaintiff had an opportunity to review the loan offer, including the APR. Plaintiff does not dispute he had this opportunity, but asserts he "did not fully understand the terms of the agreement or their full implication." (SOF, Fact No. 21.) Whether Plaintiff understood the terms of the agreement, however, is not the issue. The issue here is surprise, and Plaintiff cannot claim surprise where he had the opportunity to review the loan offer before accepting it.

Defendant also asserts Plaintiff cannot claim surprise because the APR "is a prominent term set forth in the beginning of the Loan document in bold lettering and was not hidden from Plaintiff." (Mem. of P. & A. in Supp. of Mot. at 12, ECF No. 79-1.) Plaintiff disputes Defendant's characterization of the APR as "prominent," (SOF, Fact No. 24), but does not dispute the APR was clearly set out in bold lettering in the beginning of the loan agreement.

Considering all of these factors and the evidence in the record, there is at least a minimal degree of procedural unconscionability here. Specifically, there was unequal bargaining power between Plaintiff and CashNet and the loan offer was presented on a take-it-or-leave-it basis, which weighs in favor of a finding of oppression. There is no evidence of surprise, however. Specifically, there is no evidence CashNet pressured Plaintiff to apply for or accept the loan, there is evidence Plaintiff had an opportunity to review the loan offer before accepting it, and the APR is set out in bold near the beginning of the loan document.

2.   Substantive Unconscionability

There being only a minimal level of procedural unconscionability, there must be strong evidence of substantive unconscionability to find the APR unconscionable. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (citing *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000)). In assessing the substantive unconscionability of the APR, "it is not sufficient for a court to consider only

whether 'the [APR] exceeds cost or fair value.'" *De La Torre*, 5 Cal. 5th at 983 (quoting *Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 926 (1985)). "The court must also 'look to the basis and justification" for the rate. *Id.* (citing *Perdue*, 38 Cal. 3d at 926). For example, if "the interest rate is high because the borrowers of the loan are credit-impaired or default-prone, then this is a justification that tends to push away from a finding of substantive unconscionability." *Id.* Courts may also "consider whether there are market imperfections that make it less likely that the price was set by a 'freely competitive market' and therefore more susceptible to unconscionability." *Id.* at 984 (quoting *Perdue*, 38 Cal. 3d at 927).

Here, Defendant argues the APR is not substantively unconscionable because the loan was unsecured and Plaintiff had a low credit score. Plaintiff does not dispute either of these facts, both of which weigh against a finding of substantive unconscionability.

Plaintiff responds that the rate itself, 128.40%, is evidence of substantive unconscionability. Clearly, the rate, in the abstract, is high. But, as the California Supreme Court stated in *De La Torre*, in considering whether a price term "is 'unreasonably and unexpectedly harsh[,]'" courts must look at context, not "just a single printed number[.]" 5 Cal. 5th at 975. The unsecured nature of the loan and Plaintiff's low credit score are part of that context, and as stated above, those factors weigh against a finding of substantive unconscionability.

Plaintiff asserts there are other factors, however, that tip the scale in the opposite direction. First, he points to the rates charged by other lenders. The first of those rates applies to "near-prime" borrowers, (Opp'n to Mot. at 14), and thus is not comparable. *See Perdue*, 38 Cal. 3d at 926-27 (quoting *Bennett v. Behring Corp.*, 466 F.Supp. 689, 697 (S.D. Fla. 1979)) (stating courts may consider "the price actually being paid by ... other similarly situated consumers in a similar transaction[ ]'") The second rate is alleged to be from a peer of CashNet, (Opp'n at 14), but the evidence Plaintiff cites does not support that allegation. (Barthel Decl., Ex. H at 84.) The third rate Plaintiff cites is alleged to be a rate offered to similarly situated consumers, i.e., "high risk-borrowers," *De La Torre*, 5 Cal. 5th

at 973, but it does not offer a contrast to the rate in Plaintiff's loan.  On the contrary, it shows a slightly higher rate (135%) than the rate for Plaintiff's loan (128.40%).  *Id.* at 974.

Second, Plaintiff urges the Court to consider whether the APR is commensurate with the risks of the loan.  In assessing the risk, Plaintiff ignores the undisputed facts that Plaintiff's loan was unsecured and Plaintiff had a low credit score.  Instead, he takes issue with CashNet's "underwriting model," (Barthel Decl., Ex. A at 50), and asserts it is too focused on income as opposed to likelihood of default.  The evidence reflects CashNet's underwriting model does consider income, (*id.* at 51), however, that is not the only factor it takes into consideration.  It also obtains "data from credit reporting agencies[,]" (*id.*), considers the applicant's credit score, (*id.* at 70), and the applicant's prior loan history with CashNet.  (Id. at 149.)  Indeed, Plaintiff acknowledges elsewhere that the underwriting model considers "a consumer's income, rent or mortgage payment amount, employment history, external credit reporting agency scores, amount and status of outstanding debt and other recurring expenditures, fraud reports, repayment history, charge-off history and the length of time the customer has lived at his or her current address."  (Barthel Decl., Ex. H at 21.)  Contrary to Plaintiff's assertion, this evidence does not reflect CashNet's underwriting model is focused "more on income than likelihood of default."  (Opp'n to Mot. at 16.)[4]

Next, Plaintiff argues the Court must consider whether the APR for Plaintiff's loan is commensurate with the costs of the loan.  Although cost is a factor courts may consider in determining whether a price term is substantively unconscionable, *De La Torre*, 5 Cal. 5th at 983, Plaintiff fails to cite any evidence of the costs associated with Plaintiff's loan.

---

[4] Plaintiff's other arguments on risk fare no better.  Specifically, his argument that CashNet's minimum APR for installment loans is inflated is not supported by any evidence.  And his suggestion that CashNet could provide a lower interest rate to cover the risk goes more to CashNet's business practices, not whether the APR for Plaintiff's loan was appropriate to the risks Plaintiff presented.  The same may be said for Plaintiff's assertion that CashNet preys on its customers.

Instead, the evidence he cites concerns capital expenditures, revenue, and profit margins of CashNet's parent company, Enova. (Barthel Decl., Ex. H.)

Considering the undisputed evidence discussed above, there is only one factor that weighs in favor of a finding of substantive unconscionability here: The rate itself, which is 128.40%. The California Supreme Court has made clear, however, that in considering whether an interest rate "is 'unreasonably and unexpectedly harsh[,]'" courts must look at "more than just a single printed number[.]" *De La Torre*, 5 Cal. 5th at 975. Context is key, *id.* at 983, and here the context does not demonstrate the APR is substantively unconscionable.

In sum, Plaintiff does not dispute the loan was unsecured and that when he applied for the loan his credit score was low, making him a high-risk borrower. "Unsecured loans made to high-risk borrowers often justify high rates," and "[b]oth consumers' acceptance of such rates, as well as restrictions on them, may trigger unintended consequences." *Id.* at 973. Nevertheless, "a court declares unconscionable only those interest rates that—in light of the totality of a transaction's bargaining context—are so 'unreasonably and unexpectedly harsh' as to be 'unduly oppressive' or 'shock the conscience.'" *Id.* Those circumstances are not present here, and thus the Court finds the interest rate for Plaintiff's loan was not unconscionable.

### III.

### CONCLUSION AND ORDER

Absent a finding that the interest rate on Plaintiff's loan was unconscionable, each of Plaintiff's claims fails. Accordingly, the Court grants Defendant's motion for summary judgment. The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated: September 15, 2025

Hon. Dana M. Sabraw
United States District Judge

23cv0086 DMS(KSC)